## FEDERAL SURETY CO. v. SMITH.

### No. 12145.

Court of Civil Appeals of Texas. Fort Worth.
Dec. 21, 1929.

Rehearing Denied Feb. 1, 1930.

Hyer & Christian, of Fort Worth, for appellant.

W. D. Smith and H. T. Cooper, both of Fort Worth, for appellee.

DUNKLIN, J.

The Federal Surety Company, defendant in the court below, has appealed from a judgment in favor of Marshall H. Smith, plaintiff, for indemnity claimed under an insurance policy issued in his favor by the defendant.

The policy sued on was issued by the defendant to the plaintiff, who at the time was engaged in the business of soliciting insurance and also performing services for a lumber company, and, while the policy was in full force and effect, the plaintiff sustained an injury as the result of a fall, while descending a stairway in an office building in the city of Fort Worth; the injury sustained being to his head, back, and other portions of the body. The policy contained a provision insuring the plaintiff for a weekly accident indemnity of $37.50. It also contained this provision:

"The insurance given by this policy is against the loss of life, limb, limbs, sight, speech, hearing or time resulting from personal bodily injury (suicide or self-destruction, or any attempt, threat, while either sane or insane not included) which is effected solely and independently of all other causes by the happening of a purely accidental event, and against loss of time from bodily sickness or disease which is contracted and begins not less than fifteen days after the date of this policy, all in the manner and to the extent hereinafter provided."

Then follows part 1, which provides for indemnity for loss of life and loss of members of the body, for loss of sight, speech, and hearing.

Part 2 reads as follows:

"Indemnity as provided in this Part is payable only in the event the injury does not result in any of the losses for which provision is made in Part 1.

"A. Total Disability. If injury such as before described shall at once and continuously after the occurrence of the accidental event wholly disable the Insured from performing each and every duty pertaining to his occupation the Company will pay said Weekly Accident Indemnity for such period as the Insured shall be so disabled.

"B. Partial Disability. Or if injury such as before described shall not at once wholly and continuously disable the Insured but shall thereafter within one hundred days wholly disable him, or shall from the date of the accident or immediately following a period of total disability continuously disable and prevent the Insured from performing work substantially essential to his duty or duties, the Company will pay one-half said Weekly Accident Indemnity for the period of such disability not exceeding two hundred weeks."

Under the heading "Standard Provisions" are the following:

"4. Written notice of injury or sickness on which claim may be based must be given to the Company as soon as practicable after the date of the accident causing such injury or after the commencement of disability from such sickness. In event of accidental death immediate notice thereof should be given to the company.

"5. Such notice given by or in behalf of the Insured or beneficiary, as the case may be, to the company at its home office in Davenport, Iowa, or to any authorized agent of the company, with particulars sufficient to identify the Insured, shall be deemed to be notice to the Company. Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible.

"6. The company upon receipt of such notice, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not furnished within fifteen days after the receipt of such notice the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss upon submitting within the time fixed in the policy for filing proofs of loss, written proof covering the occurrence, character and extent of the loss for which claim is made.

"7. Affirmative proof of loss must be furnished to the Company at its said office in case of claim for loss of time from disability within ninety days after the termination of the period for which the Company is liable, and in case of claim for any other loss, within ninety days after the date of such loss. * * *

"8. The company shall have the right and opportunity to examine the person of the Insured while living when and so often as it may reasonably require during the pendency of claim hereunder.

"9. All indemnities provided in this policy for loss other than that of time on account of disability will be paid immediately after receipt of due proof.

"10. Upon request of the Insured and subject to due proof of loss all accrued indemnity for loss of time on account of disability will be paid at the expiration of each sixty days during the continuance of the period

for which the Company is liable, and any balance remaining unpaid at the termination of such period will be paid immediately upon receipt of due proof. * * *

"14. No action at law or equity shall be brought to recover on this policy prior to the expiration of forty days after proof of loss has been filed in accordance with the requirements of this policy, nor shall such action be brought at all unless brought within one year from the expiration of the time when a cause of action for the loss accrues.

"15. If any time limitation of this policy with respect to giving notice of claim or furnishing proof of loss is less than that permitted by the law of the state in which the Insured resides at the time this policy is issued, such limitation is hereby extended to agree with the minimum period permitted by such law."

Plaintiff's injury occurred on December 23, 1925, and in his petition he sought to recover the full weekly accident indemnity of $37.50, from and after the date of his injury, on allegations that his injury had resulted in total disability within the meaning of part 2, copied above.

In another count in the petition, and as an alternative plea, it was alleged that, if plaintiff had not suffered total disability for that entire period of time, then from and after the termination of his total disability he had suffered partial disability as a result of the injury, which partial disability continued and would continue for a period of two hundred weeks, and, on account of the partial disability so suffered, he sought indemnity provided in subdivision B of part 2 of the policy quoted.

Performance of all the conditions and requirements, with respect to notice to the defendant of the injury, proof of loss, etc., as stipulated in the policy, was also alleged.

The defendant filed a plea in abatement, based upon allegations of plaintiff's failure to give the notices and make the proofs required by those provisions of the policy. The defendant also pleaded a general denial, and also pleaded in bar an alleged failure of the plaintiff to comply with the quoted provisions, with respect to furnishing the defendant with notice of the injury and proof of loss claimed by him as the result of injury.

On May 16, 1928, the defendant's plea in abatement, together with the evidence introduced thereon, was heard and overruled, to which the defendant excepted. Thereafter, and on the same date, the case was tried before a jury, who returned findings on special issues, which, together with the findings thereon, are as follows:

"Gentlemen of the jury: This case is submitted to you on special issues, and you will, from the evidence in the case answer the following questions:

"You are instructed that total disability is such disability as renders the insured substantially unable to perform each and every material duty pertaining to his occupation.

"Bearing in mind the foregoing instruction, you will answer:

"Special Issue No. 1. Question: Was or was not the plaintiff solely, from the injury complained of, at once and continuously after the occurrence of the same, totally disabled for any period of time? Answer yes or no.

"Answer: Yes.

"Special Issue No. 2. If you have answered the above and foregoing question in the negative, then you need not answer this question, but if you have answered the same in the affirmative then state:

"Question: For what period of time following the date of said injury did the plaintiff suffer such total disability if any?

"Answer: 29 weeks.

"Special Issue No. 3. If you have found in answer to special issue No. 2 that the plaintiff was totally disabled from the date of the injury to the present time, then you need not answer this question, but if you have found in answer to the same that the plaintiff was not totally disabled during all, or any part, of the time intervening between the date of the injury and the present date, then answer the following question:

"Question: Was or was not the plaintiff partially disabled, that is, was he continuously disabled as to prevent him from performing work substantially essential to the duties of his occupation as described in the policy of insurance in question: Answer 'yes' or 'no.'

"Answer: Yes.

"Special Issue No. 4. If you have answered the next preceding question in the negative then you need not answer this question, but if you have answered the same in the affirmative, then state:

"Question: For what period of time, if any, was the plaintiff thus partially disabled, that is disabled from performing work substantially essential to the duty or duties pertaining to his occupation?

"Answer: July 16–1926 to May 18, 1928.
                              "R. E. Speer, Foreman.

"The burden of proof is upon the plaintiff to establish by a preponderance of the evidence (and by a preponderance of the evidence is meant the greater weight of the testimony) the affirmative of each of the above and foregoing special issues submitted to you."

The judgment rendered, after setting out the findings of the jury found above, contains these recitals:

"In addition to the facts found by the jury, as shown by the foregoing verdict, the court finds that on December 18 (14), 1925, the de-

fendant Federal Surety Company, in consideration of the premiums required by defendant therefor and paid by plaintiff, issued to plaintiff the policy of insurance described in plaintiff's petition, whereby the defendant agreed to pay the plaintiff the sum of $37.50 per week during the time he might be totally disabled, and $16.75 ($18.75) per week during the time he might be partially disabled, but not exceeding two hundred weeks, on account of injury received by accidental means, and that on December 23, 1925, while said policy of insurance was in force and effect, the plaintiff received an injury by accidental means, as alleged in his petition, that within time prescribed by said policy of insurance the plaintiff gave notice to defendant of said injury and furnished to defendant affirmative proof of the said injury and of the disability resulting therefrom, and made demand upon defendant for the indemnity provided for by said policy; that the defendant failed and refused to pay to plaintiff the indemnity provided for by said policy; that the plaintiff is entitled to recover of the defendant a penalty of twelve per cent. upon the amount of indemnity due him under said policy by reason of its said failure and refusal; 'for more than 30 days after demand therefor, to pay said indemnity, that plaintiff employed W. D. Smith and H. T. Cooper, who are attorneys at law, and duly and legally licensed to practice law in this state, to prosecute this suit; that plaintiff and defendant in open court agreed that the sum of $500.00 is a reasonable attorney's fee for the prosecution of this suit, and the court finds that the plaintiff is entitled to recover of the defendant the said sum of $500.00; the court further finds that said policy of insurance provided for indemnity at the rate of $18.75 per week for partial disability, and the court further finds that the plaintiff is entitled to recover of the defendant for partial disability the sum of $1,790.62, and that the aggregate sum which the plaintiff is entitled to recover against the defendant on account of the foregoing verdict of the jury and the findings of the court is $3,723.49."

The court then rendered judgment for the amount so found and recited to be due.

Plaintiff testified that after the accident he saw one William A. Hunter, a representative of the insurance company and informed him of the injury he had suffered; that Hunter told him that the policy had been canceled, but that plaintiff would be protected for the accident which had occurred while the policy was in full force; that Hunter then gave him blanks for making out proof which the insurance company had sent to Hunter, after plaintiff had written for such blanks. He further testified that the first physician employed by him to treat him for his injury was Dr. Jack E. Daly; that on January 28, 1926, he made out proof of his accident, and of the injuries received therefrom, and secured from Dr. Daly a surgeon's report of such injury, all of which were made out on the blanks furnished to the plaintiff by the company, and immediately mailed such proof and surgeon's report to the company after showing it to Mr. Hunter.

He further testified as follows: "I made demand upon the defendant in this case for indemnity under that policy. They never did meet the demand by paying anything on it. After January, 1928, I went to see Dr. Daly often. Other doctors have treated me since then. * * * Dr. Trigg saw me. No, he was not my regular doctor; he was the company's doctor. Mr. Hunter told me to go to him."

Plaintiff further testified that he then went to Dr. Trigg and secured from him a surgeon's report of his injury, which was attached to a statement by the plaintiff giving a history of his accident and injury, etc., all made out on blanks furnished by the defendant company dated February 7, 1926, and all mailed to the defendant; that similar reports and proofs were also made out by himself and Dr. Trigg, on similar blanks, dated April 27, 1926, and similar and like notices and proofs were also made out and given to the defendants on June 2, 1926. He further testified that he had been under the treatment of Dr. Trigg ever since.

He further testified in part as follows: "At the time I presented these proofs about which I have testified to the defendant, I made demand on it for indemnity under this policy. Neither of those demands were ever complied with by payment of any indemnity. A representative of the company called on me with reference to my claim under this policy, and discussed it with me. I have discussed my claims with Mr. Hunter, who was the agent of the company. Mr. Hunter nor any other representative of the company ever offered me, for the company, any indemnity under this policy. The reason I went to Dr. Trigg was that Mr. Hunter told me he was the physician of the company. I am still under his care. I was up there today, and was up there yesterday. I was up there for the lamp treatment twice yesterday."

The reports so referred to by the witness were introduced in evidence, and there was no evidence offered by the defendant to show that it did not receive them.

Other than as shown above, plaintiff submitted to the defendant no further proof of loss of ability to pursue his business; and the defendant offered no evidence to show that it paid or offered to pay plaintiff any sum on account of his inability to pursue his occupation, nor did the defendant offer any evidence to show any reason for such failure on its part. In his pleadings on which he went to trial, he specially pleaded a waiver

by the defendant of the right to complain of plaintiff's failure to furnish further proof than was furnished by his inability, either total or partial, to perform the duties of his employment; such waiver being based upon defendant's previous denial of any liability on the policy.

■■ It cannot be reasonably doubted that the proofs submitted by the plaintiff in documentary form, noted already, constituted a strict compliance with the terms of the policy entitling plaintiff to at least some indemnity, if he suffered a loss of ability to labor, within the terms of the policy. And it is our conclusion that, if the defendant repudiated liability altogether, that fact would relieve the plaintiff of the necessity of submitting further proof of such loss, since the provision requiring proof of such loss was solely for the benefit of defendant, and the law did not require the plaintiff to perform the useless act of continuing to furnish proof after the defendant had repudiated liability.

The waiver of the right to have further proofs made than those the plaintiff did make was involved in the court's finding to the effect that plaintiff made all proofs of loss necessary under the terms of the policy; and the proof was sufficient to support that finding.

The liability provision in the policy was construed by our Supreme Court in the case of Commonwealth Bonding & Casualty Co. v. Bryant, 113 Tex. 21, 240 S. W. 893, and the trial court followed that construction in the submission of the issues of liability in this case, and defendant has not challenged that construction.

■ Nor do we believe there is any merit in the contention that special issue No. 1 was objectionable as being multifarious, or that issue No. 4, when read in connection with issue No. 3, as should be done, was subject to the criticism of omitting the necessity of a finding that the partial disability must be continuous. Appellant has made the computation that the twenty-nine weeks for which the jury found total disability expired on July 14, 1926. The basis of that computation is that plaintiff's testimony was that he was injured on December 23, 1925, and that therefore that would be the date the twenty-nine weeks began. Appellant then argues that, since the jury found that the partial inability to labor began on July 16, 1926, there was an interval of two days between the period of total disability and partial disability, and there could be no recovery in accordance with the policy of partial disability because the same was not continuous. There is no basis in any of the evidence to show that plaintiff's disability did not continue during the interval of two days mentioned. On the contrary, if the plaintiff's evidence be accepted as true, which the jury evidently did, the disability continued from the time of his injury to May 18, 1928; and it is manifest from the record that the jury intended to so find, but made a clerical error as to the date of expiration of total disability.

We are unable to say, as insisted by appellant, that the findings of the jury on total and partial disability were without sufficient support in the evidence or that the same was so clearly opposed to the great weight of evidence as to require a reversal. Those findings were supported, not only by the testimony of plaintiff himself, but his testimony was corroborated to a substantial extent by that of the physicians who treated him.

■■■ The plaintiff testified specifically that he made demand of defendant for payment of the indemnity and that his demand was never complied with. Appellant did not object to that testimony, nor was the witness cross-examined as to the nature of, the demand made. There is no merit in the contention urged on this appeal for the first time that that testimony was incompetent and without any probative force, on the ground that it amounted to a statement of a conclusion rather than testimony of a fact. We conclude further that his testimony was sufficient to support the court's finding that plaintiff made a demand on the defendant for payment of indemnity, which was refused, and the further conclusion by the trial court that, by reason of such demand and its refusal, plaintiff was entitled to recover the statutory penalty and attorney's fee in addition to the indemnity fixed by the policy. While plaintiff did not testify specifically that the defendant company "refused" payment of indemnity, yet we believe that the court's finding of such refusal is warranted by all the facts and circumstances in evidence bearing on that point within the meaning of the requirements of article 4736 of the Revised Civil Statutes, 1925, and such decisions as Mutual Life Ins. Co. v. Ford, 103 Tex. 522, 131 S. W. 406; Liberty Life Ins. Co. v. Moore (Tex. Civ. App.) 10 S.W.(2d) 178.

The plaintiff testified in part that about one week after the accident, when he first saw Mr. Hunter, the defendant's agent, Mr. Hunter said: "The company has canceled your policy, but you will be protected in your accident because the policy was in force when you got hurt." Mr. W. D. Smith, counsel for plaintiff, in his closing argument to the jury, quoted the agent Hunter as reporting to plaintiff: "Marshall, they have canceled your policy and you won't get anything." Counsel for the defendant objected to the argument on the ground that it was not a correct statement of just what Mr. Hunter did say on that subject, and repeated to Mr. Smith the testimony, whereupon Mr. Smith said: "All right, if that is the testimony, you gentlemen heard it. It is not my pur-

pose to misquote any testimony, but the fact remains, gentlemen of the jury, that he told him his policy was canceled and he never has got anything." The court made no ruling on the objection, and the counsel for plaintiff then proceeded with his argument.

■ We are unable to perceive how the defendant could have been prejudiced by the argument after Mr. Smith had made the correction referred to.

■ Nor do we find any reversible error in the further argument of Mr. Smith, following the statement that the defendant had denied liability even for any disability and that plaintiff had been compelled to institute the suit, in saying: "The reason why he is here appealing to twelve men, citizens of Tarrant County, today, is because this Federal Surety Company, up yonder in Davenport, Iowa, is refusing to comply and carry out its contract." After the conclusion of the argument, the court overruled an objection then made by defendant to the last-quoted remark on the ground that it was improper and that it was calculated to arouse prejudice against the defendant by reason of the fact that it was a corporation doing business up in Iowa. The fact that the defendant was a corporation, chartered and doing business in the state of Iowa, was not only alleged in the pleadings, but was shown in the policy, upon which the suit was based.

For the reasons stated, all assignments of error are overruled, and the judgment is affirmed.

### On Motion for Rehearing.

Appellant earnestly insists that we erred on original hearing in overruling its assignment of error presenting the contention that Issue No. 1 submitted to the jury should be condemned as multifarious. The proposition in appellant's brief presenting that contention reads as follows:

"An issue which submitted to the jury the question as to whether plaintiff was totally disabled solely from the injury complained of, and at once and continuously after the occurrence of the same, and for any period of time, was a multifarious issue and should not have been given over defendant's objection on such ground."

Article 2189, Rev. Civ. Statutes 1925, provides that each separate issue of fact relied on by plaintiff as a basis for recovery, and essential to his right of recovery, must be submitted to the jury separately from all others. The purpose of that rule is to insure findings on all such necessary issues of fact.

From a reading of appellant's propositions quoted above, it will be observed that no contention was made that the issue whether or not plaintiff sustained the injury complained of and the further issue whether he was thereafter disabled from performing the duties of his occupation should have been submitted as controverted issues separately from all others. The proposition assumes that the injury was in fact sustained and that disability followed. The grounds of objection urged in the proposition are that it included three separate issues of fact, which are, in substance, as follows:

First. Whether plaintiff's disability was due solely to the injury complained of.

Second. Whether such disability occurred immediately after the injury and continued without cessation.

Third. Whether he was totally disabled.

There can be no doubt that the jury's answer to issue No. 1 included a finding of total disability resulting solely from the injury and continuing for some period of time not stated. Any possible doubt on that point is removed by the finding on the next issue, No. 2, which specifically refers to issue No. 1. The finding on issue No. 2 necessarily implies a further finding that there was a total disability resulting solely from the injury, and it specifically stated that such disability began immediately after the injury was sustained and continued without cessation for twenty-nine weeks from and after that time. The finding in answer to issue No. 3 was specific that, as a result of the injury, plaintiff suffered partial disability; and the finding in answer to issue No. 4 was that such partial disability continued without cessation from July 16, 1926, to May 18, 1928, and, especially when read in the light of the preceding issues, as the jury must have done, those findings imply that such partial disability resulted solely from the injury.

■■■ It thus appears that there were separate and distinct findings by the jury on each and all of the controverted issues of fact included in issue No. 1; and thus the purpose of the requirement of the statute for the submission of all material issues of fact separately from each other was fully accomplished. It is a familiar rule that, in testing the correctness of the court's instructions to the jury, the entire charge may be looked to.

■ It will be noted that the issue of waiver of the necessity of proofs of loss was not submitted to the jury. It also appears that, in the conclusions filed by the trial judge, there was no specific finding of such waiver. Appellant insists that the evidence conclusively shows that plaintiff did not make proofs of loss within ninety days from the termination of the respective periods for which the company was liable, and especially for the period following June 2, 1926; the policy containing a provision for a weekly accident indemnity of $37.50. As pointed out in the opinion on original hearing, the plaintiff made four proofs of loss which at all

events were within the required time to entitle plaintiff to the respective weekly indemnities up to the date of the last proof, which was on June 2, 1926. But no further proofs were submitted as a basis for his claim for indemnity from and after that date and up to May 18, 1928. Since the plaintiff specially pleaded defendant's waiver of proof, the finding of the court that plaintiff furnished to the defendant all proofs of loss required by the terms of the policy must be construed as intended to mean that, by reason of the defendant's denial of liability, plaintiff was not required to furnish any further proofs of loss than those that were furnished. It would be unreasonable to infer that the trial court meant to find that further proofs were made after June 2, 1926, in the absence of any testimony whatever to support such a finding.

The refusals of the defendant to pay plaintiff any indemnity after its receipt of the several different proofs submitted to it by the plaintiff, without any denial by the defendant of the receipt of such proofs, and without any reason or explanation given for such refusal, was equivalent to a denial of liability, and such repudiation of liability was a waiver of any right defendant otherwise would have had to require further proofs. It therefore follows that the facts found by the trial judge established such waiver, and, with respect to that issue, the judgment of the trial court should be sustained, notwithstanding the absence of further proofs of loss than those furnished by the plaintiff, and notwithstanding the absence of any specific finding of waiver by the trial court. It is a familiar rule that a judgment may be sustained on other grounds than that upon which it is based, provided such grounds are conclusively established.

The appellant's motion for rehearing is overruled.