## UNIVERSAL LIFE & ACCIDENT INS. CO. v. LEDEZMA.

### No. 2336.

Court of Civil Appeals of Texas. Beaumont.
April 27, 1933.

Appellee's Motion for Rehearing Granted in Part May 17, 1933.

Appellant's Motion for Rehearing Overruled June 7, 1933.

R. G. Storey, of Dallas, and L. M. Patterson, of San Antonio, for appellant.

G. Woodson Morris and Martin S. Tudyk, both of San Antonio, for appellee.

WALKER, Chief Justice.

In January, 1930, appellant, Universal Life & Accident Insurance Company, issued to Maria de La Luz Ledezma a policy of insurance on her life in the sum of $218.00, and in the following March another policy in the sum of $327. In both policies her father, Manuel Ledezma, appellee herein, was named beneficiary. The insured died December 10, 1930. This suit was filed January 21, 1931, in county court at law No. 1, Bexar county, by appellee against appellant, to recover the principal amount of these two policies, with interest, damages, and attorney's fees. Appellant answered by general and special demurrers, general denial, and by pleading specially the following provision of the policies: "If the insured shall die within one year from the date of issuance hereof, either by self destruction, while sane or insane, from tuberculosis, no matter when contracted, from heart disease, in any of its forms, from Bright's disease, from kidney disease, or from venereal disease, then the amount payable under this policy shall be the sum actually received by the company as premiums hereon and no more."

Judgment was for appellee for the principal amount of the policies in the sum of $545, and under the provisions of article 4736, R. S. 1925, damages in the sum of $65 and attorney's fees $150, on the verdict of the jury that the insured did not die of tuberculosis, and that $150 constituted "a reasonable fee to be paid plaintiff's attorney for his services in the prosecution and collection of the claim involved herein." The appeal was to the San Antonio Court of Civil Appeals, transferred to the Austin court, and then to this court by orders of the Supreme Court.

■ Appellant was not entitled to an instructed verdict on the theory that, under all the evidence, the insured died from tuberculosis; nor was the finding of the jury on this issue so against the great weight and preponderance of the evidence as to be clearly wrong. The insured was in apparent good health when the policies were issued, and

continued in apparent good health up to about eighteen days before her death. From the date the policies were issued to the date of her fatal illness, she was constantly engaged in heavy manual labor, and the evidence was clearly to the effect that she did her work effectively and to the satisfaction of her employers. These were "non-medical policies"; issued without examination by a physician, but before they were issued the insured was visited and interviewed by one of appellant's agents who, from her appearance, stated at the time that she was a good insurance risk. There was no change in her apparent health, as it was when this agent interviewed her, up to the date of her last illness. Dr. Enrique Novoa, graduate of the National University of Mexico, attended the deceased professionally a few days before her death. In his death certificate he reported that she died from tuberculosis. However, he testified that he examined her sputum for tuberculosis and it was negative; that he made no laboratory test, and refused to swear that "this girl died of tuberculosis"; he said, "I cannot swear because the tuberculosis of this case was not tested, in any way to be proven, that she died of tuberculosis; * * * I cannot swear all the symptoms were tuberculosis; I cannot swear anything about that; * * * I cannot prove that she died from tuberculosis; * * * You see, all of the appearances were of tuberculosis. When this patient died, the appearance was of tuberculosis, and you see, the purpose is to prevent the family from getting the disease, so the people will take all precautions against tuberculosis; so that is why I put tuberculosis, no matter if I didn't find tuberculosis in a clinical test." This doctor also offered the following additional explanation of the death of the deceased:

"Q. What is this disease you doctors call bronchiectasis? A. This is a disease something like dilation of the bronchial tubes, that makes superation in the lungs.

"Q. That is not tuberculosis is it? A. No.

"Q. I will ask you whether or not an abscess like that would form on her lungs and she die very suddenly from that? A. Yes, sir, that abscess could have formed on the lungs and she could die suddenly from that.

"Q. She could have died from this acute bronchiectasis, is that true? A. Yes.

"Q. This abscess on the lung would not be tuberculosis, would it? A. No."

The testimony fully supported the jury's verdict.

■The court did not err in receiving evidence to the effect that, at the time the policies were issued, the apparent physical condition of the insured "was perfectly. all right," nor was error committed in receiving evidence that her apparent health was good up to the date of her last illness. The witnesses who gave this testimony testified merely in corroboration of the statement made by appellant's agents, on which the policies were issued. Also these witnesses were intimately acquainted with the insured and were in constant association with her. The admissibility of this character of testimony, under the circumstances of this case, is fully sustained by the recent opinion of the Commission of Appeals in Vann v. National Life & Accident Ins. Co., 24 S.W.(2d) 347. See, also, Pullman Co. v. Hoyle, 52 Tex. Civ. App. 534, 115 S. W. 315; National Life & Accident Ins. Co. v. Muckelroy (Tex. Civ. App.) 40 S.W.(2d) 1115.

■ The copy of the death certificate of the insured, certified to by the city, or local, registrar of the city of San Antonio, was correctly excluded by the trial court. Under article 4477 (rule 54a, Copies of Records), Vernon's Ann. Civ. St., the power to make certified copies of the records of births and deaths, receivable in evidence "in all courts," is conferred upon the state registrar.

■ The court also correctly excluded the proof of death of the insured, though it was signed by appellee. This proof was submitted to appellee, who signed it after some of the blanks had been filled in and then delivered it to appellant's agent. After it was delivered to this agent, he filled in, without permission of appellee, the blank explaining the cause of the death of the insured, to the effect that "the insured died of pulmonary tuberculosis." This alteration of the proof of death rendered it inadmissible in evidence.

■ We sustain appellant's contention that error was committed in entering judgment against it for damages and attorney's fees, under article 4736. Under his pleading and proof, appellant first demanded payment of these policies on or about the 24th of December, 1930. He filed this suit on January 21, 1931, less than thirty days after making the statutory demand. No amended petition was subsequently filed, but appellee tried his case on his original petition. This pleading and proof was insufficient to support the judgment for damages and attorney's fees. American Nat'l Ins. Co. v. La Blue (Tex. Civ. App.) 45 S.W.(2d) 731; Washington Fidelity Nat. Ins. Co. v. Williams (Tex. Com. App.) 49 S.W.(2d) 1093; National Life Ins. Co. v. Mouton, 113 Tex. 224, 252 S. W. 1040; First Texas Prudential Ins. Co. v. Long (Tex. Civ. App.) 28 S.W.(2d) 220; Standard Accident Ins. Co. v. Bittle (C. C. A.) 36 F.(2d) 152; Mutual Life Ins. Co. v. Ford, 103 Tex. 522, 131 S. W. 406. The authorities cited clearly hold that appellee's suit was prematurely filed, as a basis for the recovery of damages and attorney's fees. But, though prematurely filed, they also hold that he would have had a cause of action had he filed.

an amended petition after thirty days from giving the notice, alleging therein the necessary facts under article 4736. This error requires that the judgment of the lower court be reversed and the cause remanded for a new trial. However, if appellee, within fifteen days from the entry of this judgment, will enter a remittitur for the damages and attorney's fees, then judgment of the lower court will be reformed by eliminating these items, and, as reformed, affirmed.