**NATIONAL BANKERS LIFE INS. CO., Appellant,**

v.

**Carl D. CARTWRIGHT, Appellee.**

**No. 14852.**

Court of Civil Appeals of Texas.

Dallas.

Oct. 29, 1954.

Chaney, Davenport & Harless, Dallas, for appellant.

Elizabeth Carp, Dallas, for appellee.

CRAMER, Justice.

This appeal is from a judgment for $6,-504. Cartwright was insured under policy issued by appellant against loss of time resulting from accidental injury and sickness and for indemnity for hospital residence. The policy was issued Oct. 11, 1950 and thereafter Cartwright had a claim for arthritis which was paid. However under the terms of the policy, the Company thereafter declined to accept and returned a premium check. (See Note 1), notifying Cartwright that unless he agreed to a rider on the policy, excepting therefrom coverage for arthritis, rheumatism, lumbago, or any ailment of the back or spine, they could not renew the policy. Cartwright agreed and the rider was placed on the policy before the claim here involved originated. Thereafter the renewal premium was accepted by the insurer. Some time thereafter the claim here involved was presented to the company and it declined payment on the ground that the claim was barred under the terms of the rider. This suit resulted from such denial of liability.

On a jury trial, a verdict on special issues found the following facts: (1) Cartwright's rupture or herniation of the intervertebral disc into the spinal column on July 16, 1951 was effected directly through accidental means; (2) was produced through accidental means; (3) independent of all other causes; (4) which was not in any way caused by the diseased tissues of the intervertebral disc between the 4th and 5th vertebrae; (5) which wholly and continuously disabled Cartwright

1. The policy provided that the insurer could cancel at any premium paying date.

from performing each and every duty pertaining to his business or occupation and resulted in total loss of time (6) for "27 months, 10½ days; Future unknown"; (7) which continued as a direct and proximate result of the injury of July 16, 1951; (8) that such injury caused Cartwright to be hospitalized (9) for 28 days; (10) that affirmative proof was furnished appellant; (10–A) by proof of loss; (11) which disability was not on account of any ailment of the back or spine; (12) and such disability was not contributed to by arthritis, or (13) the result of a strain or a sprain; (14) that the total disability and total loss of time were contributed to or caused by arthritis after the operation; (15) but were not contributed to by any ailment involving the back or spine.

Upon the verdict the judgment appealed from was entered against appellant Company and it has duly perfected this appeal, here briefing five points of error.

 Points one and three will be considered together. They assert error (1) in overruling the motion for instructed verdict because the evidence was uncontroverted that Cartwright's disability was contributed to by arthritis, rheumatism, lumbago, or an ailment of the back or spine, and the policy provides that Cartwright waived such claim based on sufficient consideration; and (3) in disregarding issue No. 14 and entering judgment for benefits accruing after the operation Dec. 18, 1951. These points necessitate a review of the evidence to ascertain if there is any evidence to support their submission to the jury.

The insurance company turned down the claim on the ground that the proof of loss filed Sept. 13, 1951 showed Cartwright's loss of time was due wholly or partly to arthritis, and declined to settle the claim. On Dec. 24, 1951 Cartwright filed an amended proof of loss stating for the first time that his disability was due to "ruptured lumbar disc L–4." Dr. Kindley, witness for Cartwright, on direct examination, material here, testified: "Q. Now, Doctor, could you distinguish for us the difference between an injury and an ailment in medical terms? A. Well, ailment could be considered ordinarily—oh, I suppose you could use it in a very broad sense to cover any abnormal condition; that is, whether it was an injury or a sickness. I think ailment is a rather broad term. We often speak of minor ailments; when a patient sees a doctor about a mashed finger, which we consider a minor ailment. I think I am right that an ailment is a rather broad term; it means something wrong with somebody; it could be medical or it could be an injury." And on cross-examination: "Q. A person, then, who is suffering from a herniated disc would have an ailment of his back, wouldn't he, Doctor? A. Well, that is my understanding of the word 'ailment'. I haven't looked it up—the definition in some time. I would consider it an ailment, yes."

Dr. Hibbitts, witness for Cartwright, testified: "Q. Please state whether or not, in your opinion, his disability from which he was suffering the last time you saw him was due to what doctors term to be an ailment of the back and spine. A. The term: what doctors term to be an ailment of the back and spine is not acceptable so far as I am concerned, as there are many conditions that could affect the spine and still be considered an ailment. However, I believe that what Mr. Cartwright has would come under such a heading."

Dr. Barekman, a Company witness, material here, on direct examination testified:

"Q. With this condition, if he received an injury to his back or spine, would it reasonable—would the pain—would he experience pain because of the arthritic condition? A. Yes, I can answer that yes. Any spine that has chronic arthritis in it may be a symptomatic until an injury occurs and then they will start hurting.

"Q. Does that have to be a severe pain? A. Well, that is hard to evaluate, too.

"Q. But he would experience pain? A. I think he would, but pain is such a—some individuals are very sensitive to it and others are not.

"Q. Doctor, if a man whose pictures we have here, experienced low back pains prior to the taking of these pictures, would that indicate in all reasonable probability that he continued to have pain because of the arthritic condition? A. I think so. I think that would be a reasonable assumption. Prior to an injury, if he had been having low back pains, I think it would be reasonable to assume that he would have, would continue to have pain.

"Q. In your opinion, the herniated disc, is it an ailment of the back or spine? A. Yes, it is."

In our opinion the above evidence raised the issue of whether or not the total disability and total loss of time were caused or contributed to by arthritis both before and after his operation on Dec. 18, 1951. Point 1 is overruled, and point 3 is sustained.

Point 2 asserts error in the overruling of the insurance company's motion for instructed verdict because the uncontroverted evidence established that the loss or disability sustained by Cartwright was the result of a hernia and the policy excluded recovery for loss sustained by reason of hernia. The motion referred to is one for judgment heard at conclusion of plaintiff's evidence, and we find nothing in the record here to show that any other motion was filed, or that the one referred to was renewed at the conclusion of all evidence. However we are of the opinion that a herniated disc between vertebrae in the spinal column is not a hernia as that term is used in the policy in question. Point 2 is overruled.

Point 4 asserts error in the limitation in the court's definition of "ailment" to disease and requested that the word "something" be used instead of "disease," disease being too limited and restricted, while ailment is broad and includes other affections of the body than the pathological term disease. Issue No. 11 was: "Do you find from a preponderance of the evidence that the disability suffered by plaintiff herein, if you have so found in answer to preceding questions that he suffered total disability and loss of time, was not on account of any ailment involving the back or spine." And the definition of ailment was: "As used herein 'Ailment' means disease which substantially impairs the health, that materially weakens the vigor of the constitution or seriously damages the vital functions of a person." The jury answered issue No. 11, "It was not."

Appellant is supported in his objection by Black's Law Dictionary, 3rd Ed., which defines "Ailment" as follows: "Within the meaning of an application for a benefit certificate, something which substantially impairs the health of the applicant, materially weakens the vigor of his constitution, or seriously deranges his vital functions, thereby excluding chronic rheumatism. National Americans v. Ritch, 121 Ark. 185, 180 S.W. 488, 489. The term 'ailment,' however, covers disorders which could not properly be called diseases. Cromeens v. Sovereign Camp, W. O. W., Mo. App., 247 S.W. 1033, 1034." See also 3 C.J.S., p. 505 for various definitions by the courts. In our opinion the objection should have been sustained by the trial court.

Point 4 is sustained.

Point 5 complains of the court's allowing 12% penalty since there was no evidence of a demand on appellant for payment as required by Art. 3.62 of the Insurance Code, V.A.T.S.

The record does not show a compliance with such statutory prerequisite to recovery of a penalty. Point 5 is sustained.

For the errors pointed out the judgment below must be reversed and the cause remanded for another trial.

Reversed and remanded.