**KEY LIFE INSURANCE COMPANY OF SOUTH CAROLINA, Appellant,**

v.

**Johnny TAYLOR, Appellee.**

No. 7148.

Court of Civil Appeals of Texas, Beaumont.

June 25, 1970.

Rehearing Denied July 16, 1970.

708

Wheat, Wheat & Stafford, Woodville, for appellant.

Seale & Stover, Jasper, for appellee.

KEITH, Justice.

This is an action upon a contract of insurance. Trial was by jury and judgment was rendered for plaintiff upon the verdict. The parties will be referred to here as they were in the trial court.*

In response to requests, the defendant admitted plaintiff was injured on or about August 21, 1968, while working in the course and scope of his employment for E. N. Read and that its Blanket Accident Policy issued to E. N. Read was in full force and effect on that date. The contract of insurance in issue shows E. N. Read to be the Policyowner. Plaintiff brought this action directly against the defendant insurance company. In its first series of points, defendant contends this is an indemnity policy and that plaintiff cannot maintain this suit. These points are overruled.

█ Even though E. N. Read is named as the Policyowner, it is inescapable that this policy is for the benefit of his employees. The contract is called a "Blanket Accident Policy" and contains the provisions usually found in a group policy. In the first paragraph, the defendant agrees to to pay benefits for losses resulting from accidental bodily injuries suffered by persons in the employ of the Policyowner. The word "indemnity" is not used in this policy, and there is no provision that benefits will be paid only after a judgment is obtained against E. N. Read. There is nothing in the policy to indicate that E. N. Read must first be found liable to an injured employee before the benefits are payable. Throughout the policy the words "benefit" and "Benefit for Losses" and "Claimant" are used. It is thereby indicated that the "Policyowner" and the "Claimant" are not intended to be the same person, because in other portions of this policy, E. N. Read is clearly designated as the "Policyowner". It is clear to us that it was the intention of the parties for this to be an insurance contract for the benefit of a third party, and that plaintiff can properly maintain this suit. Edds v. Mitchell, 143 Tex. 307, 184 S.W.2d 823, 829 (1945); Quilter v. Wendland, 403 S.W.2d 335 (Tex.Sup., 1966); Old Colony Insurance Company v. Messer, 328 S.W.2d 335 (Beaumont, Tex.Civ.App., 1959, error ref. n. r. e.).

█ Defendant also contends that plaintiff cannot recover in this case because it has a release executed by E. N. Read. The disposition of the first points of error above controls this point. In holding this contract was for the benefit of plaintiff and that he could properly bring this suit, it necessarily follows that only plaintiff could release his cause of action. Neither party has cited us a case directly in point. Defendant argues that inasmuch as this policy of insurance provides that the Policyowner may terminate the policy, and that the consent of no other person was required to effect such termination, that the Policyowner is likewise empowered to give it a release of a claim. We do not follow the logic of this argument. Even though it is true the Policyowner could have failed to pay the premiums due and the policy would terminate, or could have terminated the contract of insurance otherwise by his action alone, it does not follow that once a cause of action has accrued in favor of a party beneficiary the Policyowner could do anything to release it. Those cases cited to us by plain-

---

* The majority opinion, except that portion relating to penalty and attorney's fees, was prepared by Associate Justice Stephenson whose dissent is confined to the holding on the penalty and attorney's fees question.

tiff are more nearly in point in construing a group policy of insurance providing for penalty and attorney's fees, to mean the injured person was the "holder of the policy" and the one who could recover those benefits. See Mercury Life Insurance Company v. Mata, 310 S.W.2d 130 (San Antonio Tex. Civ.App., 1958, error ref.); Grand Lodge Free and Accepted Masons v. Walker, 110 S.W.2d 945 (Dallas Tex.Civ.App., 1937, no writ). The point is overruled.

■ Defendant's next point of error is that there was no evidence to support the finding by the jury that plaintiff was regularly attended by a doctor of medicine or osteopathy for a period of 44 weeks as a direct result of his injury. We consider only the evidence favorable to such jury finding in passing upon this point of error. Plaintiff testified as follows: The date of his injury he was carried to St. Elizabeth Hospital in Beaumont and placed under the care of Dr. Campbell, who performed surgery upon him. He stayed in that hospital about a week and was carried to the hospital in Woodville, where he was placed under the care of Dr. Swearingen. He remained in the Woodville Hospital about four months and had a second operation, this time by Dr. Swearingen. Dr. Swearingen or his partner came by to see him regularly while in the Woodville Hospital. After being released from the hospital he went to see Dr. Swearingen every week at first, and then every two weeks. He was off from work a year from the date of his injury, and during that year he continued to see Dr. Swearingen. This testimony supported the finding by the jury. The point is overruled.

Defendant has points of error contending that plaintiff has not made the proper proof of loss to defendant as required by the insurance policy as a condition precedent to filing this action. The policy of insurance before us requires written notice of injury within 20 days of the date of the commencement of the first loss for which benefits arising out of an injury may be claimed. Such notice given by or on behalf of a claimant must be with particulars sufficient to identify the injured person. Proof of loss must be furnished to the company within 90 days after the termination of the period for which claim is made. The policy also provides that no action may be brought before the expiration of 60 days after written proof of loss is furnished.

The evidence shows this accident occurred August 21, 1968. Read, called as a witness by defendant, testified he filed three proofs of loss with defendant, dated October 16, 1968, October 24, 1968, and March 8, 1969. All three were signed by Read, and the first was also signed by Dr. George L. Campbell and the other two by R. E Swearingen, M. D. Read testified further that defendant sent him checks to pay hospital and doctor bills and also checks so that he could pay plaintiff $35.00 per week. Read gave plaintiff his last check February 16, 1969, and told him there would not be any more money coming.

This contract of insurance contains the following provision:

"6. The Company, upon receipt of the notice required by this Policy, will furnish to the claimant such forms as are usually furnished by it for filing proof of loss. If such forms are not so furnished within fifteen (15) days after the Company received such notice, the claimant shall be deemed to have complied with the requirements of this Policy as to proof of loss upon submitting, within the time fixed in the Policy for filing proofs of loss, written proof covering the occurrence, character and extent of the loss for which claim is made."

■ Notwithstanding Read's testimony that he told plaintiff on February 16, 1969 that there would be no more money coming from the defendant, he testified that he sent in additional proofs of loss thereafter, namely on March 8, 1969. Plaintiff had no direct contact with the defendant, and there is no proof in the

record from any source that the defendant sent any additional forms either to Read or to the plaintiff after the claim of March 8. Under the policy provision quoted above, plaintiff was "deemed to have complied with the requirements of the policy" and the point now urged is without merit. The denial of liability made to Read was just as effective as if made directly to plaintiff. Merchants' Ins. Co. of New Orleans v. Nowlin, 56 S.W. 198, 199 (Tex.Civ.App., 1900, no writ). See generally: 22 A.L.R. 407, s. 108 A.L.R. 901, s. 49 A.L.R.2d 161; 32 Tex.Jur.2d, Insurance § 384, p. 594, and cases therein cited.

Defendant's next series of points complain of the action of the trial court in submitting issues to the jury as to penalty and attorney's fees and then rendering judgment upon such issues. The jury found the duration of plaintiff's disability to be 44 weeks, the defendant's liability being fixed by the verdict at $1,540.00. Defendant was given credit for $840.00 theretofore paid and judgment was for the sum of $700.00 plus 12 per cent penalty and $1,500.00 attorney's fees. It is argued that no proper demand was made in order to make Article 3.62 of the Insurance Code, V.A.T.S., operative, and that demands made by plaintiff's petition were excessive. The first sentence in such Article reads as follows:

"In all cases where a loss occurs and the life insurance company, or accident insurance company, or life and accident, health and accident, or life, health and accident insurance company liable therefor shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve (12%) per cent damages on the amount of such loss together with reasonable attorney fees for the prosecution and collection of such loss."

The facts are not in dispute and the record conclusively shows that no formal demand (as distinguished from pleadings filed in court) was ever made by the plaintiff. The original petition, filed March 18, 1969, contained an allegation that plaintiff had made "proper demand" upon the defendant, and sought the penalties and attorney's fees authorized by Article 3.62, Insurance Code. Defendant answered on April 17, 1969, stating it had paid all claims due under the policy. Thereafter, a first amended original petition was filed on August 26, 1969, and a second amended original petition filed on October 16, 1969, in each of which the allegations as to "proper demand" were repeated. Defendant filed its first amended original answer October 14, 1969, again denying any further liability under the policy. Trial began October 21, 1969.

Plaintiff makes no claim that there was any type of demand made other than that contained in his pleadings and the only evidence in the record bearing on the question is a stipulation with reference to the filing of the pleadings as we have outlined.

■■■ Under the facts of this case, plaintiff may not recover the penalty and attorney's fees. Article 3.62, Insurance Code "is penal in nature and must be strictly construed." McFarland v. Franklin Life Insurance Company, 416 S.W.2d 378, 379 (Tex.Sup., 1967). We readily accept the proposition that such a demand may be made after the institution of the suit and shown by amended pleadings of the plaintiff. Indeed, the leading case on the subject so holds, Metropolitan Life Insurance Company v. Wann, 130 Tex. 400, 109 S.W. 2d 470, 472, 115 A.L.R. 1301 (1937), from which we quote:

"As a condition precedent to the right to recover same a demand must be made 30 days before the filing of the petition upon which the cause is tried, and that petition must allege the demand. Such demand may be made after the institution of the suit, but must be thereafter set up by an amended petition. The filing of a suit is not a demand within the statute.

Mutual Life Ins. Co. v. Ford, 103 Tex. 522, 131 S.W. 406; National Life Ins. Co. v. Mouton, 113 Tex. 224, 252 S.W. 1040; Northwestern Life Assur. Co. v. Sturdevant, 24 Tex.Civ.App. 331, 59 S.W. 61; Universal Life & Accident Ins. Co. v. Ledezma (Tex.Civ.App.) 61 S.W.2d 165; Washington Fidelity National Ins. Co. v. Williams (Tex.Com.App.) 49 S.W.2d 1093."

We note, particularly, that Chief Justice Hickman, then serving on the Commission of Appeals, cited Northwestern Life Assur. Co. v. Sturdevant, 59 S.W. 61 (Tex.Civ. App., 1900, error ref.), as one of the authorities supporting the quotation above. Our research has indicated that this is probably the leading case on the question under consideration. We quote from *Sturdevant*:

"But we think it matters not how vigorously the insurance company may have denied its liability or asserted its determination not to pay. This cannot be made to take the place of what this statute prescribes as essential to the accrual of those penalties. These acts do not constitute a failure to pay the loss after demand made therefor, when there has been no demand. If the legislature had intended that a suit on the policy was the demand provided for, and the defense of the suit constituted a failure to pay after demand, it was useless to provide for a demand and failure to pay in order to render the company liable for these items. It would have been sufficient to provide that defendant would be liable for them if payment was not made in a reasonable time after suit. We think it was the intention of the legislature to require a demand to be made after the policy became due, and before a suit, in order to satisfy the valid demand, without putting the policy holder to the necessity of suing therefor. The demand was the significant act, intended to put the company upon election whether it would pay the sum demanded, or require the

policy holder to sue therefor, and subject itself to those penalties if the plaintiff recovered judgment for such sum. We do not mean to say that the demand could not be made after suit; on the contrary, we think that the demand might be made thereafter, and a cause of action for the penalties set up by an amended petition as an original suit; but, in our opinion, the suit itself would not be such demand as the statute intended." (59 S.W. at pp. 62 and 63)

In accord with the rule announced in *Wann*, following *Sturdevant*, we call attention to the following cases: Mutual Life Ins. Co. v. Ford, 103 Tex. 522, 131 S.W. 406, 408 (1910); National Life Ins. Co. v. Mouton, 113 Tex. 224, 252 S.W. 1040, 1041 (1923); Iowa Life Ins. Co. v. Lewis, 187 U.S. 335, 23 S.Ct. 126, 47 L.Ed. 204, 214 (1902); Bouknight v. Langdeau, 333 S.W. 2d 670, 676 (Austin Tex.Civ.App., 1959) affirmed, 162 Tex. 42, 344 S.W.2d 435 (1961); American Nat. Ins. Co. v. Park, 55 S.W.2d 1088, 1091 (Austin Tex.Civ.App., 1932, error ref.); Southern Union Life Ins. Co. v. White, 188 S.W. 266, 268 (Austin Tex.Civ.App., 1916, error ref.); Universal Life & Accident Ins. Co. v. Ledezma, 61 S.W.2d 165, 166 (Beaumont Tex.Civ.App., 1933, error dism.); Rio Grande Nat. Life Ins. Co. v. Bailey, 153 S.W.2d 493, 496 (Eastland Tex.Civ.App., 1941, no writ); American Nat. Ins. Co. v. Collins, 149 S.W. 554 (Austin Tex.Civ.App., 1912, no writ). See also: 46 C.J.S. Insurance § 1409, p. 730; 44 Am.Jur.2d, Insurance, § 1799, p. 721; 3 Appleman, Insurance Law & Practice § 1603, pp. 345–348; 145 A.L.R. 343. But, cf. Washington Fidelity Nat. Ins. Co. v. Williams, 49 S.W.2d 1093, 1094 (Tex. Comm.App., 1932, holdings approved).

Plaintiff cites Illinois Bankers' Life Ass'n v. Dodson, 189 S.W. 992, 997 (Dallas Tex.Civ.App., 1916, no writ), but we find no conflict with the rule which we have set out above. Indeed, *Dodson* cites and relies upon *Sturdevant* and *Lewis*, supra. Another authority which plaintiff brings

to our attention is American Nat. Ins. Co. v. Smith, 97 S.W.2d 963, 964 (El Paso Tex. Civ.App., 1936, no writ). This case has been examined carefully and we find that it cites *Dodson*, supra, as one of its authorities. Finally, plaintiff places emphasis upon Washington Fidelity Nat. Ins. Co. v. Williams, supra (49 S.W.2d 1093, 1094), but we can find little justification for his reliance thereon. Indeed, it is apparent that a demand, other than that contained in the pleadings, had been made by Williams after suit was filed. The court simply pointed out that if amended pleadings were filed setting out the making of such demand, such would be sufficient to lay a predicate for the imposition of the statutory penalty and attorney's fees, the general rule restated.

*Sturdevant* clearly holds that a demand is required before there can be imposed upon the insurer the liability for penalties and attorney's fees. We are in the same position as was the court in National Bankers Life Ins. Co. v. Cartwright, 272 S.W.2d 377, 380 (Dallas Tex.Civ.App., 1954, no writ): "The record does not show a compliance with such *statutory prerequisite* to recovery of a penalty." (Emphasis supplied.)

Our review of the authorities convinces us that the rule governing the imposition of penalties and attorney's fees under Article 3.62, Insurance Code may be stated in this manner:

Plaintiff must make a formal demand more than thirty days before trial, and such fact must be alleged in the trial pleading. If the demand is made after the institution of the suit, such fact may be alleged in amended pleadings filed in the pending suit. A demand made in pleadings alone is insufficient to support an award of penalty and attorney's fees.

Plaintiff having failed to establish his right to the penalty and attorney's fees, it follows that the trial court erred in awarding any recovery under Article 3.62, Insurance Code. The judgment of the trial court is reformed to deny recovery for the 12 per cent penalty and the attorney's fees, and affirmed as to the remainder of the judgment.

Reformed and affirmed.

STEPHENSON, Justice (dissenting).

I respectfully dissent to the portion of the opinion which denies a recovery of the penalty and attorney's fees, as I have concluded the demand made by plaintiff is sufficient under Article 3.62 of the Insurance Code. There is no case cited to us or that I have found that passes directly upon the point before us. The question is: Can a petition serve as a demand in a case in which the petition is amended more than 30 days after the original is filed, and the demand by plaintiff and denial of liability by defendant is then alleged in the amended petition? No cases cited in the majority opinion on this point holds this procedure to be inadequate, including the Wann and Sturdevant Cases, supra.

There is nothing in the statute itself to indicate that a particular form must be used in order to make a demand. This statute does not state that a demand cannot be made in the form of an original petition. It is obvious that the purpose of this penal provision is to give a defendant an opportunity to study the plaintiff's demand for 30 days, and determine whether or not it should pay such demand or deny liability and risk the loss of a penalty and attorney's fees. It has been held that an oral demand was sufficient. In Scott v. National Bankers Life Ins. Co., 253 S.W.2d 485 (San Antonio Tex.Civ.App., 1952, error ref. n. r. e.), plaintiff went in person to defendant's office and told the general agent his wife had been killed and he wanted to make a claim under the policy. The Scott Case cites Pan-American Life Ins. Co. v. Terrell, 29 F.2d 460 (5th Cir., 1928).

**714**

The Supreme Court of Texas has held that a proof of loss may be a sufficient demand under the statute. National Life & Accident Ins. Co. v. Dove, 141 Tex. 464, 174 S.W.2d 245 (1943). The Dove Case cited Great Southern Life Ins. Co. v. Johnson, 25 S.W.2d 1093 (Tex.Comm.App., 1930, holdings approved).

It has been consistently held that a claimant may file his petition, make a claim, and then file an amended petition and thereby satisfy Article 3.62. Southern Union Life Ins. Co. v. White, 188 S.W. 266, 268 (Austin Tex.Civ.App., 1916, error ref.).

The Supreme Court of Texas has held in Great American Reserve Insurance Co. v. Britton, 406 S.W.2d 901, 907 (Tex.Sup., 1966), that where the insurer filed suit to cancel the policy before suit on the policy is filed, that the right of the insurer to require a demand as a prerequisite to liability for attorney's fees is waived. Then this statement is made:

> "The purpose of the demand provision is to give the insurer a reasonable opportunity to investigate the claim and pay the proceeds before suit is filed."

The filing of the original petition in this case gave the defendant in the present suit all of the information in specific detail that could have been set forth in a letter written by plaintiff's attorney. The defendant in this case had 30 days to conduct further investigation, if desired to do so, and then admit liability before it could become liable for penalty and attorney's fees. As it was said in Metropolitan Life Ins. Co. v. Ray, 105 S.W.2d 377 (Texarkana Tex.Civ.App., 1937, no writ), in a case in which suit was filed first, then demand given, that the insurance company could have avoided liability for penalty and attorney's fees by paying or tendering payment of the demand. The defendant in this case filed its answer and amended answer denying liability in both instances. I would affirm the judgment of the trial court for the full amount of the judgment.